AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
U.S. District Court
~~District of Kansas~~

# UNITED STATES DISTRICT COURT

for the

### District of Kansas

AUG 2 2023

Clerk, U.S. District Court
By_____Deputy Clerk

In the Matter of the Search of:
*(Briefly describe the property to be searched or identify the person by name and address)*

SOUTH SAND HILL ROAD SITE, located on Parcel ID:
040-068-27-0-00-00-010.00-0 in Harvey County, Kansas, associated with
the addresses 1919 South Sand Hill Road, Burrton, Kansas 67020, Fully
described in Attachment A,

}
}
}
}
}
}
}

Case No. 23-6201-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SOUTH SAND HILL ROAD SITE, located on Parcel ID: 040-068-27-0-00-00-010.00-0 in Harvey County, Kansas, associated with the addresses 1919 South Sand Hill Road, Burrton, Kansas 67020, fully described in Attachment A.

located in the **DISTRICT OF KANSAS**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

✓ evidence of a crime;

✓ contraband, fruits of crime, or other items illegally possessed;

✓ property designed for use, intended for use, or used in committing a crime;

a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 42 U.S.C. § 6928(d)(2)(A)(under RCRA) | Resource Conservation and Recovery Act, knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter . |

The application is based on these facts:

See Affidavit.

✓ Continued on the attached sheet.

Delayed notice of_____days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Hugh McCullough, U.S. EPA Criminal Investigation Division
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2 Aug 2023

_____
*Judge's signature*

City and state: Wichita, Kansas

HONORABLE GWYNNE E. BIRZER, U.S. Magistrate Judge
*Printed name and title*

Attested to by the Affiant, in accordance with the requirements of Fed.R.Crim.P. 41(d)(3), by telephone or other reliable electronic means, to wit:

2 Aug 2023 @ 2:03 pm @ Wichita

_____
HONORABLE GWYNNE E. BIRZER, U.S. Magistrate Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF

**SOUTH SAND HILL ROAD SITE, located
on Parcel ID: 040-068-27-0-00-00-010.00-0
in Harvey County, Kansas, associated with
the addresses 1919 South Sand Hill Road,
Burrton, Kansas 67020. (Fully described in
Attachment A to the Affidavit in Support
of the Search Warrant)**

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Hugh McCullough, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the United States Environmental Protection Agency –
Criminal Investigation Division ("EPA-CID"). I have been in this position since November of
2015. I am currently assigned to the EPA-CID Kansas City Investigations Section located in
Lenexa, Kansas, which includes coverage of the District of Kansas. My responsibilities include
conducting investigations of alleged criminal violations of federal statutes, including the Resource
Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6901, *et seq*. As a Special Agent, I received
extensive training on environmental laws and criminal investigations of environmental crimes. I
am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training
Program and Environmental Investigations Basic Program. I also have a Bachelor of Science degree
in Chemical Engineering from the University of Missouri-Columbia, and prior to becoming an
agent with EPA-CID, I was employed for eight years as an environmental engineer with the Air

1

and Waste Management Division for EPA Region 7, and I conducted civil investigations under the Clean Air Act.

2.     As an EPA-CID Special Agent, I am authorized by law, under 18 U.S.C. § 3063, to obtain and execute federal arrest and search warrants and serve as a Federal Law Enforcement Officer for purposes of Federal Rule of Criminal Procedure 41(a)(2)(c). I am responsible for, among other things, conducting investigations of alleged criminal violations of various environmental statutes including RCRA and the regulations promulgated thereunder, which govern the handling of hazardous wastes. I also have statutory law enforcement authority for Title 18 offenses.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information I obtained from other agents, witnesses, persons, and agencies. This affidavit is intended to show that there is sufficient probable cause for the requested warrant. It does not set forth all my knowledge, or the knowledge of others, about this matter.

4.     I am presently engaged in an investigation regarding the storage and disposal of a chemicals believed to constitute hazardous wastes at a site referred to herein as the South Sand Hill Road Site, located at 1919 South Sand Hill Road, Burrton, Kansas 67020, and further described in Attachment A.  This affidavit is in support of a search warrant commanding any agent of the U.S. EPA-CID, with appropriate assistance from investigative and technical staff of EPA Region 7, EPA's National Enforcement Investigations Center, and any other federal, state, or local agents/investigators as may be deemed necessary, to secure and safely search the premises located at the South Sand Hill Road Site for the items listed in Attachment B.

5.     Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 42 U.S.C. §

6928(d)(2)(A) (a subsection of RCRA) have been committed by Michael Le, the owner of Millenia Productions and owner of the South Sand Hill Road Site, and other unidentified individuals and entities. There is also probable cause to search the property described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes further described in Attachment B.

## STATUTORY AND REGULATORY BACKGROUND

### RESOURCE CONSERVATION AND RECOVERY ACT (RCRA)

6.      The Solid Waste Disposal Act of 1965, as amended in 1976 by the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et. seq.*, was enacted by Congress to address the growing number of hazardous waste sites resulting from unregulated waste disposal practices. The objectives of RCRA include, among other things, protection of human health and the environment through stringent guidelines that regulate the generation, treatment, storage, transportation, and disposal of hazardous wastes.  RCRA accomplishes its objectives by creating a "cradle to grave" regulatory scheme to govern and track hazardous wastes from the point of generation to final disposition.

7.      RCRA empowers the EPA to identify and list hazardous wastes. It also authorizes EPA to promulgate regulations which set forth requirements for hazardous waste generators, transporters, and owners and operators of hazardous waste treatment, storage, and disposal ("TSD") facilities.

8.      In order to be regulated as a hazardous waste under RCRA, the material must first qualify as a "solid waste." The term "solid waste," as used in the statute and the regulations promulgated there under, includes any solid, liquid, semi-solid, or contained gaseous material

resulting from industrial, commercial, mining and agricultural activities.  See 42 U.S.C. § 6903(27) and 40 C.F.R. § 261.2.

9.     Among other things, the statute requires that EPA identify and list solid wastes which meet the statutory definition of hazardous waste.  42 U.S.C. § 6921.  Section 6903 of RCRA, 42 U.S.C. § 6903(5), defines "hazardous waste" as:

> *[A] solid waste, or combination of solid wastes, which because of its quantity,*
> *concentration, or physical, chemical or infectious characteristics may --*
>
> > *(A) cause or significantly contribute to an increase in mortality or an increase in*
> > *serious irreversible, or incapacitating reversible illness; or*
> > *(B) pose a substantial present or potential hazard to human health or the*
> > *environment when improperly treated, stored, transported, or disposed of, or*
> > *otherwise managed.*

Relevant to this matter, materials are considered to be discarded, and hence to be solid wastes if they are "abandoned" as defined in the RCRA regulations.  A material is "abandoned" if it is disposed of, burned or incinerated (or is accumulated, stored or treated before, or in lieu of, being disposed of, burned or incinerated).  40 CFR § 261.2(b).  The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment. 42 U.S.C. § 6903(3). A solid waste is considered a hazardous waste under the RCRA regulations if it is either specifically listed in the RCRA regulations (known as "listed" hazardous waste), or if it exhibits one of four characteristics: ignitability, corrosivity, reactivity or toxicity (known as "characteristic" hazardous waste).  40 CFR Part 261 codifies the identification and listing of hazardous waste, while Subpart C of Part 261 codifies the

characteristics of hazardous waste.  A hazardous waste characteristic is a property which, when present in a waste, indicates that the waste poses a sufficient threat to merit regulation as hazardous. A solid waste is a characteristic ignitable hazardous waste if a representative sample of the material is a liquid, other than an aqueous solution containing less than twenty-four percent alcohol by volume, with a flash point of less than 140 degrees Fahrenheit, as determined using a specified test method.  40 CFR § 261.21.  Wastes exceeding the regulatory levels for specified contaminants are assigned a D waste code.  Ignitable hazardous waste is referred to in the RCRA regulations as "D001" waste.

10.     Under RCRA regulations, hazardous wastes may only be transported to, treated by, stored at, or disposed of at facilities which have received permits properly issued pursuant to RCRA to handle such wastes in accordance with RCRA. 42 U.S.C. §§ 6925 and 6926.  These RCRA permits impose regulatory conditions specifically tailored and limited to the type of hazardous waste handling activity at that particular facility.  The facility may handle only those hazardous wastes and perform those activities covered by its permit.  See 40 C.F.R. § 264.

11.     RCRA requires that a generator of hazardous waste must notify EPA of its hazardous waste activity.  42 U.S.C. § 6930.  In general, generators are permitted to store hazardous waste for up to 90 days without having to acquire a RCRA permit, provided that certain storage and recordkeeping requirements are met, including keeping copies of manifests of hazardous waste shipped off-site, biennial reports of hazardous waste activity and records of any test results or waste determinations,     for     a     period     of     three     years.     40     CFR     §     262.40.

Similarly, an owner or operator of a facility which treats, stores, or disposes of hazardous waste must comply with the minimum national standards for the acceptable management of hazardous waste laid out in Subpart A of 40 CFR Part 264, or, in an authorized State, with the

equivalent standards for hazardous waste management facilities promulgated in accordance with 40 C.FR. § 271.12.

12.     Under RCRA, states may obtain U.S. EPA authorization to administer and enforce a hazardous waste program in lieu of U.S EPA.  42 U.S.C. § 6926.  The State of Kansas, through the Kansas Department of Health and Environment (KDHE), is authorized to issue and enforce RCRA permits and regulations in the State of Kansas. 42 U.S.C. § 6926; 78 Fed. Reg. 43810; K.A.R. 28-31.  Nevertheless, EPA retains the legal ability to enforce RCRA civilly and criminally. See 42 U.S.C. §§ 6928(d)(3), (4) and (5) (federal prosecution of state program violations).

13.     The criminal enforcement provisions of RCRA specify, in relevant part, that "any person who . . . knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter . . . without a permit under this subchapter . . . shall be subject to a fine or up to five years imprisonment, or both."  42 U.S.C. § 6928(d)(2)(A).

## PROBABLE CAUSE

14.     On July 13, 2023, Mike Windholz, Fire Investigator with Kansas Office of the State Fire Marshal, responded to a reported wildland fire located at 1919 South Sand Hill Road, Burrton, KS (the South Sand Hill Road Site). Located on the 36.2 acre property is a "Lake House" Air Bed and Breakfast (AirBNB) and a large metal barn building.  Investigator Windholz documented his activities in a Fire Investigation Report, Case Number 2023-216.

15.     The Fire Investigation Report stated the Office of the State Fire Marshal was requested to investigate by the local fire department due to  a person having reportedly been injured by the fire, in addition to the presence of unknown chemicals on site. The injured person, Alan

Winter, was transported by emergency medical services to Christi St. Francis Hospital in serious but stable condition. He was treated and released later the same day.

16.     The Fire Investigation Report stated that, on July 10, 2023, a tenant at the AirBNB observed a burn pit in use and unknown chemicals in storage on site. The tenant stated Winter, a handyman and tenant of the property, had informed the tenant he was burning chemicals and if the smell was bothersome for the tenant or other guests, he would take care of it.

17.     The Fire Investigation Report stated the area of origin of the fire was a manufactured pit approximately 30 feet in diameter and unknown depth.



Figure 1. Photograph from the Fire Investigation Report of burn pit and containers.

18.     The Fire Investigation Report stated a witness from a neighboring property was interviewed by Investigator Windholz on July 13, 2023. The witness stated he had sold a "Mike Le" the property approximately seven to eight months prior. The witness stated to Investigator Windholz that the burn pit had been burning for one to two months.

19.     A review of an online internet portal for the Appraiser's office in Harvey County, Kansas, indicates that real property Parcel 040-068-27-0-00-00-010.00-0 is owned by Michael Le and Jennie Dao. The address listed is 1803 South Sand Hill Road, Burrton, Kansas; however, the South Sand Hill Road Site at 1919 South Sand Hill Road is also located on this Parcel.

20.     The Fire Investigation Report stated Alan Winter was interviewed by Investigator Windholz on July 13, 2023. Winter confirmed Michael Le was the current owner of the property, and that Winter had been employed as a handyman for seventeen years and has resided on the property for the last three to four years. During this interview, Winter stated that the containers, containing hair and nail products, were delivered to the property via a box truck from Michael Le's business in Wichita, Kansas. He said employees of Michael Le's business offloaded the containers around the burn pit. Winter said he had been directed by Michael Le to burn the containers in the burn pit that Winter had originally used to dispose of waste from the onsite AirBNB. Winter said that, at Le's direction, he began burning waste in the pit on Saturday, July 8, 2023. Winter stated that on July 13, 2023, one of the containers he put into the burn pit  exploded and that ignited material from inside the container struck and burned him.

21.     On July 14, 2023, Investigator Windholz and I interviewed Winter a second time. Prior to the interview, Winter had informed Investigator Windholz that he (Winter) and Michael Le had just returned from lunch. During the interview, Winter's statement changed from the narrative of the previous day. He stated he had burned the containers out of curiosity and not at the direction of anyone else.

22.     On July 14, 2023, EPA Region 7 Emergency Response On-Scene Coordinators (OSCs) responded to 1919 South Sand Hills Road in response to a report of an explosion and

chemical fire involving approximately 30 5-gallon containers of flammable materials being burned in an earthen pit. A Pollution/Situation Report (POLREP) dated July 14, 2023, documented their activities on site. The POLREP states there were 577 containers, mostly 5-gallon in size, were found stored outside near the burn pit, in two separate areas. The POLREP stated labels on many of the containers identified Millenia Productions LLC, as the consignee of the materials. The POLREP states the labels and Safety Data Sheets (SDSs) associated with the labels indicated that the majority of the containers were used to store paints and coating associated with nail polish and identified the contained materials as flammable liquid. The POLREP states the containers were ultimately palletized by EPA contractors and moved into the metal barn on the property. The POLREP states EPA Region 7 is currently coordinating with the property owner concerning follow up assessment, removal, and disposal activities required at the time.



Figure 2. EPA OSC Photograph of containers in the burn pit and additional containers in the background.



Figure 3. EPA OSC Photograph of selected containers.



Figure 4. EPA OSC Photograph of palletized containers inside metal barn.

23.     Photographs of the containers document numerous labels with "flammable"

warnings and other hazard indicators present on many of the containers, namely a red diamond

label that states "FLAMMABLE LIQUID."  Examples of these labels and other indicators are shown in the photograph below.



Figure 5. "Flammable Liquid" and other flammable indicators.

24.     A green label was also observed on the top of many of the containers. The label appears to list the ingredients of the material in the containers. The first ingredient listed is Ethyl Acetate CAS #141-78-6. The website for the National Institute of Health (NIH.gov) lists Ethyl Acetate as "Flammable" and an "Irritant." It states Ethyl Acetate as having a flash point of 24 degrees Fahrenheit, which is lower the flash point of 140 degrees below which a solid waste is

considered   hazardous   for   the   characteristic   of   ignitability   under   RCRA.



Figure 6. Green label indicating ingredients inside the container.

25.     Photographs of the containers also show the containers themselves in varying states of deterioration. While some appear intact, others appear dented and rusted and still others have visible holes. Some containers appear to be wrapped in plastic. Others appear to be leaking or had leaked onto the soil.



Figure 7. Photograph displaying the condition of the containers.



Figure. Another photograph displaying the condition of the containers.

26.     According to the State of Kansas, Secretary of State Online Business Search Tool, Millenia Productions, LLC (Millenia), is a limited liability company and the most recent annual report filed is dated May 7, 2023. The report lists an official mailing address of "Michael Le, 3819 N Toben, Wichita KS 67226." The report lists "Michael Le – 2636 Paradise Ct Wichita, KS 67205" and "Huon Le – 6809 W. Garden Ridge Wichita, KS 67205" as members who own 5% or more of capital. The report states "Signature of Authorized Person: Michael Le."

27.     A Google search for Millenia resulted in a Facebook page for Millenia Productions. The page states Millenia Productions is the parent company of La Palm Spa Products, Triple Vitamin, Gell II Ma[nicure]. The address listed for Millenia is 3819 N. Toben St, Wichita, Kansas. Their most recent posts are dated December 1, 2020. The posts appear to be advertising nail products. A screenshot of the posts can be viewed below.



Figure 7. Screenshot from Millenia's Facebook page.

14

## REQUEST FOR A SEARCH WARRANT

28.     Based upon the above information, there appears to be probable cause to believe that Michael Le and Millenia Productions has been illegally disposing of hazardous wastes at 1919 South Sand Hill Road, Burrton, Kansas 67020, in violation of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., and its criminal prohibitions found in 42 U.S.C. § 6928(d).

29.     I therefore respectfully request that Agents of EPA-CID, with appropriate assistance from investigative and technical staff and contractors of the EPA and any other federal, state or local law enforcement agents/ investigators as may be deemed necessary, be permitted to enter the adjacent properties and buildings located at 1919 South Sand Hill Road, Burrton, Kansas 67020, more particularly described in Attachment A, to include its curtilage, its garages or other detached structures, and vehicles under Michael Le's control that are on the property, and authorizing the seizure of items described in Attachment B, pursuant to the protocol described in this affidavit.

30.     I respectfully request permission for multiple entries, over a period of three days, onto the grounds at 1919 South Sand Hill Road, Burrton, Kansas 67020 for the duration of the search warrant to allow collection of the items described in Attachment B.

FURTHER AFFIANT SAITH NAUGHT.

I declare that the above information is true and correct to the best of my knowledge.

Respectfully submitted,

Hugh McCullough, Special Agent,
U.S. EPA, Criminal Investigations

Subscribed and sworn to before me on August 2, 2023

HONORABLE GWYNNE E. BIRZER
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A
### Property to Be Searched



**South Sand Hill Road Site**
1919 South Sand Hill Road, Burrton, Kansas 67020

The site to be searched is located within Parcel ID 040-068-27-0-00-00-010.00-0, located in Harvey County, Kansas, and outlined above in blue. The parcel, in its entirety, contains approximately 36.3 acres. On the west side of the parcel, a lakeside "AirBNB" is operated. On the east side of the parcel sits a single-story metal building, white in color, that serves as a garage and also contains a small living quarters occupied by an employee of the property. This structure is visible in the figure above, in the northwest corner of the parcel, and is also shown in the picture below. To the south of the structure is a burn pit, approximately 30 feet in diameter and of unknown depth. The burn pit is circled above in orange. For the purposes of this affidavit, the site to be searched only includes the eastern section of the parcel, which includes the white structure and burn pit, approximated above and outlined in yellow.



**ATTACHMENT B**
**List of Items to be Seized**

The following items, located within the property identified in Attachment A, that constitute evidence or instrumentalities of potential violations of  the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq*., including but not limited to the following:

1.      Environmental samples of all containers and impacted areas.

2.      Any records pertaining to the containers, the contents of the containers, and/or the handling or disposition of the containers and their contents, to include transportation, treatment, storage, and/or disposal.

**ATTACHMENT C**
**SPECIAL CONDITIONS PERTINENT TO SEARCH**

The following special conditions are applicable to the search of the premises described in Attachment A for items listed in Attachment B:

1.      Special Agents with EPA-CID will be leading the execution of this search warrant. The Special Agents executing the search warrant are authorized to enlist the assistance of necessary personnel, including technical contractors retained by the EPA and other law enforcement agents or officers.

2.      The search team is authorized to bring to the premises to be searched all equipment and materials necessary to conduct the search safely and accurately.

3.      The search team and any necessary technical personnel are authorized to access, search and copy electronic data which relates to the internal tracking of equipment, inventory, samples, analysis and analytical results within the scope of Attachment B.

4.      The search team is authorized to inventory, inspect, photograph, videotape and seize records as further described in Attachment B.

5.      The search team shall be allowed to sketch, photograph and videotape all interior and exterior portions of the premises and the exteriors including undercarriage of all vehicles located there.

6.      For the safety of the search team and preservation of evidence, the search team may restrict the movement of any vehicle on the premises during the searches.

7. The search team is authorized to exclude from the search sites and from any part of the surrounding vicinity designated by the search team as potentially unsafe, all persons who are not authorized to assist in the search. Search team members may bar all public access during the execution of the search warrants if the presence of such persons will interfere with the efficient or safe performance of the activities authorized by the warrant.

8. EPA-CID and the U.S. Department of Justice will take the following steps concerning potentially privileged attorney-client communications and attorney work product:·

      a.      Digital files and hard-copy documents will be reviewed for attorney-client communications and attorney work product prior to substantive review of the documents. The review will proceed as follows:

      b.      Digital files.

i.     The government will attempt to ascertain the names of attorneys and their employees, including from names, email addresses and from domain names. This step may include contacting counsel for Michael Le and Millenia Productions.

ii.     The computer forensic examiner will conduct an analysis of all seized electronic files to identify those that contain identified attorney names and their employees, their email addresses, domain names, or other identifiers indicative of attorney-client communications and attorney work product. The computer forensic examiner will not review those files further. Those files will be the "potentially privileged electronic files."

iii.     The computer forensic examiner may release to the investigative team electronic files not identified as potentially privileged electronic files.

c.     Hard copy documents.

i.     Special agents reviewing the hard copy documents will be directed to conduct an initial review of those documents for indicia of attorney-client communications.

ii.     The special agents will be directed to cease reviewing a document if there is an indicium that it contains attorney-client communication including names of outside law firms and lawyers. Such documents will be the "potentially privileged hard copy documents."

iii.     The potentially privileged hard copy documents will be left at the search warrant location and not seized or further reviewed.

iv.     The special agents may review and share with members of the investigative team hard copy documents not identified as potentially privileged.

v.     If during review of seized documents after the search warrant has been executed, additional hard copy documents are identified as potentially privileged, the reviewer will stop reviewing the document, put it in a sealed envelope, and provide it to the Filter Team.

d. Filter Team.

    i.      If any potentially privileged electronic files or seized potentially privileged hard copy documents are located, the government will establish a Filter Team. The Filter Team will consist of at least one U.S. Department of Justice attorney, who will have no further involvement in the investigation and prosecution. The Filter Team also will be "walled off' from any members of the investigative and prosecution team, and not communicate to them about the investigation.

    ii.      The computer forensic examiner will provide the potentially privileged electronic files to the Filter Team.

    iii.      The Filter Team will maintain the potentially privileged electronic files and the potentially privileged hard copy documents in its exclusive custody, possession, and control during the privilege review process. No other person will have access during this period of review. Nor will any member of the Filter Team disclose the substance of the reviewed documents with members of the investigation/prosecution team unless and until authorized as set forth below.

e. Filter Team procedure.

    i. The Filter Team will review the potentially privileged electronic files and the potentially privileged hard copy documents to assess which contain privileged material (in whole or in part) and which are subject to an exception or waiver.

    ii. If there is defense counsel representing the holder of the potential privilege, the Filter Team will share the potentially privileged files and documents with counsel and request concurrence. Either side may seek court resolution of disagreements if meet and confer fails.

    iii.      The Filter Team will release to the investigative and prosecution team any potentially privileged files and documents which the defense agrees (or the court rules) do not contain privilege material, or which the defense agrees (or the court rules) that waiver or an exception applies.